IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


TERESA L. McEACHERN,              )
                                  )
                   Plaintiff,     )
                                  )
vs.                               )     Case No. 07-1050-MLB
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of                   )
Social Security,                  )
                                  )
                   Defendant.     )
_____    )


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties and has been referred to this court for a recommendation
and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

On July 11, 2006, administrative law judge (ALJ) Melvin B. Werner, issued his decision (R. at 11-20).  The ALJ determined that plaintiff last met the insured status requirements on December 31, 2004 (R. at 13).  Plaintiff alleged a disability onset date of April 3, 2003 (R. at 11, 13).  At step one, the ALJ

4

found that plaintiff had not engaged in substantial gainful
activity at any time relevant to this case (R. at 13).  At step
two, the ALJ found that plaintiff had the following severe
impairments: degenerative arthritis, affective disorder, anxiety,
and headaches without neurological causation (R. at 13).  At step
three, the ALJ found that plaintiff's impairments do not meet or
equal a listed impairment (R. at 15).  After establishing
plaintiff's RFC, the ALJ found at step four that plaintiff could
not perform past relevant work (R. at 18).  At step five, the
ALJ, relying on the testimony of a vocational expert (VE), found
that plaintiff could perform other work that exists in
significant numbers in the national economy.  Therefore, the ALJ
concluded that plaintiff was not disabled (R. at 18-19).

**III.  Did the ALJ err in his RFC analysis?**

According to SSR 96-8p the RFC assessment "must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts...and nonmedical
evidence."  The ALJ must explain how any material inconsistencies
or ambiguities in the evidence in the case record were considered
and resolved.  The RFC assessment must always consider and
address medical source opinions.  If the RFC assessment conflicts
with an opinion from a medical source, the ALJ must explain why
the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.
SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1);

5

Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ's RFC findings are as follows:

> After careful consideration of the entire
> record, the undersigned finds that, through
> the date last insured, the claimant had the
> residual functional capacity for a range of
> light work with lifting or carrying 10 pounds
> frequently and 20 pounds occasionally,
> sitting about 6 hours in an 8 hour work day,
> and standing or walking about 6 hours in an 8
> hour work day. Mental limitations include
> moderate limitations in the ability to
> understand and remember detailed
> instructions; maintain attention and
> concentration for extended periods; work in
> coordination with or proximity to others
> without being distracted by them; interact
> appropriately with the general public; get
> along with coworkers or peers without
> distracting them or exhibiting behavioral
> extreme[s]; respond appropriately to changes
> in the work setting.

(R. at 16).[1]

Plaintiff takes issue primarily with the mental limitations established by the ALJ.  The ALJ's explanation of his mental RFC findings are as follows:

> As noted, the claimant has received
> antidepressant medication from her general
> practitioner without evidence of significant
> limitations until after the date last insured
> for benefits. She alleged a disability onset
> in April 2003, presented to Prairie View for
> medication in July 2004 and did not return
> for psychotherapy until March 2005 which is
> after the date last insured for benefits of
> December 31, 2004. Her decline in mental
> health appears related to discontinuing

---

[1]The ALJ found plaintiff moderately limited in 6 categories set out in the mental RFC assessment form (## 3, 6, 9, 12, 15, and 17).  The court would note that in the hypothetical question to the vocational expert (VE), the ALJ also included a moderate limitation in the ability to travel in unfamiliar places or use public transportation (# 19) (R. at 378, 380).

antidepressant and an increase in situational
related stress such as her husband's
unemployment, daughter's family problems and
brother's incarceration. Although she
reported a decline in attention and
concentration, this is not reflected in her
daily activities which include crocheting,
reading, spending time on the computer,
watching television and movies, and visiting
her parents, children and grandchildren...

As for the opinion evidence, the undersigned
is in general agreement with the medical
opinions of the State agency medical
consultants regarding the claimant's ability
to do work-related activities. The lower
level found the ability to perform a range of
light work (exhibit B9F, B10F). In addition,
no doctor who has treated or examined the
claimant has stated or implied that she is
disabled or seriously incapacitated for
periods prior to the date last insured. In
November 2004, treating source, Dr. Miller
noted migraines "once a month" treated with
medication. He also noted medication for back
pain and depression without evidence of
significant limitation. The claimant did not
seek psychotherapy until March 2005, after
the date last insured. Although a mental
residual functional assessment was submitted
on December 4, 2005, signed by Dr. Lear and
nurse practitioner Harris indicating moderate
limitations in all areas of function, this is
given little weight for several reasons. The
claimant reported that she had not seen Dr.
Lear noting the form was completed by a nurse
practitioner that is not considered an
acceptable medical source for social security
purposes (20 CFR 404.1513). In addition, this
treatment and medical assessment was well
after the date the claimant was last insured
for benefits.

(R. at 17, 18).

The court finds several errors in the ALJ's RFC findings.

First, the ALJ failed to comply with SSR 96-8p because the ALJ

failed to provide a narrative discussion describing how the
evidence supports each conclusion.  The ALJ's mental RFC findings
included 6 moderate limitations (7 were included in the
hypothetical question to the VE).  The state agency assessment,
of which the ALJ stated that he was in "general agreement" with
their opinions (R. at 18), found that plaintiff had moderate
limitations in only 2 categories (R. at 192-194, ## 12, 19).
Treatment providers Dr. Lear and advanced registered nurse
practitioner (ARNP) Harris found plaintiff moderately limited in
all 20 categories found on the mental RFC assessment form (R. at
220-221).  The ALJ gave little weight to the opinions of Dr.
Lear/ARNP Harris (which will be discussed later), but the ALJ
failed to explain why he found additional limitations beyond
those of the state agency assessment, but fewer limitations than
those of Dr. Lear/ARNP Harris.  The ALJ provided no rationale for
including 4 or 5 additional limitations not included in the state
agency assessment, but included in the opinion of Dr. Lear/ARNP
Harris, while not including other moderate limitations found by
Dr. Lear/ARNP Harris.

     In the case of <u>Kency v. Barnhart</u>, Case No. 03-1190-MLB (D.
Kan. Nov. 16, 2004), the record was devoid of any identifiable
discussion explaining how the ALJ arrived at his RFC conclusions
from the evidence or how the evidence supported his conclusions.
<u>Kency</u>, (Doc. 21 at 5).  In <u>Kency</u>, the court held as follows:

> ...the ALJ simply listed all the evidence
> contained in the record and then set forth
> his conclusion without explaining the
> inconsistencies and ambiguities contained in
> the opinions. He did not connect the dots, so
> to speak, as is required by S.S.R. 96-8p. It
> may well be that upon remand, the ALJ will
> reach the same conclusion. Nevertheless,
> S.S.R. 96-8p is defendant's requirement and
> ALJs presumably are the experts whose
> responsibility it is to know and follow
> defendant's requirements...
>
> Most important, the ALJ must explain how the
> decision was reached. When an ALJ merely
> summarizes the facts, notes that he has
> considered all of the facts, and then
> announces his decision, there is nothing for
> the court to review. The court cannot know
> how the ALJ analyzed the evidence. When the
> evidence is contradictory or ambiguous, as it
> is in most cases, the court cannot know which
> evidence was given what weight, or how the
> ambiguities were resolved. Therefore, to
> determine whether substantial evidence
> supports the conclusion, the court would have
> to reweigh the evidence. Since that option is
> precluded by law, the court can only remand
> to the defendant for a proper explanation of
> how the evidence was weighed and ambiguities
> resolved.

Kency, (D. Kan. Nov. 16, 2004, Doc. 21 at 7, 9); see also Wolfe

v. Barnhart, Case No. 05-1028-JTM (Doc. 25 at 3, July 25,

2006)("It is insufficient for the ALJ to generally discuss the

evidence but fail to relate the evidence to his conclusions").

In Kency, the court held that it was not at all clear to the

court how the RFC, as a whole, was derived.  (Doc. 21 at 8).  In

the case presently before the court (McEachern), the court

similarly finds that it is not at all clear to the court how the

10

mental RFC findings were derived.  Therefore, this case shall be remanded in order for the ALJ to comply with SSR 96-8p.

Second, the court cannot determine from the ALJ's decision what weight was given to the opinions of Dr. Molly Allen, who performed a consultative mental examination of the plaintiff on April 13, 2005 (R. at 188-191).  In making his RFC findings, the ALJ gave no indication of what weight, if any, he accorded to her findings.  Prior to making his RFC findings, the ALJ provided this summary of Dr. Allen's report:

> A psychological evaluation was performed by Molly Allen, Psy.D. on April 13, 2005. The diagnostic impression was PTSD, major depressive disorder and personality disorder NOS. It was suspected that the claimant had not done as much as she was capable of doing to overcome her depressive symptoms. Dr. Allen noted that the claimant was not persistent at tasks that she was capable of performing, but did indicate the ability to manage financial resources. **She noted the ability to understand and carry out simple instructions with some problems with attention and concentration and anxiety in crowds. She could adapt to a typical work environment with some absences** (exhibit B7F). The undersigned notes that this evaluation is after the date last insured for benefits.

(R. at 15, emphasis added).  By comparison, here is the actual summary contained in Dr. Allen's report:

> Ms. McEachern is the kind of individual who is able to understand and carry out simple instructions. **Her attention and concentration are pretty poor** because she has gotten in the habit of really not focusing and not having to focus. **When she is around**

11

> **crowds, her anxiety level would probably rise
> to the point that she would become even more
> disorganized and unfocused.** She has a hard
> time working and being around other people,
> including coworkers and bosses. She can
> adapt to a typical work environment as long
> as her physical needs are taken into account
> **but she would probably miss a lot of work
> because of the nature of how she has
> displayed symptoms of her depression in the
> past.** She is not really that persistent at
> tasks she is capable of, but she is able to
> manage financial resources at her disposal.

(R. at 191, emphasis added).

In his decision, the ALJ stated that Dr. Allen indicated

that plaintiff had "some problems with attention and

concentration and anxiety in crowds" (R. at 15). However, Dr.

Allen actually stated that plaintiff's "attention and

concentration are pretty poor," and that "when she is around

crowds, her anxiety level would probably rise to the point that

she would become even more disorganized and unfocused" (R. at

191).[2] The ALJ also stated that Dr. Allen indicated that

plaintiff could adapt to a typical work environment "with some

absences" (R. at 15). However, Dr. Allen actually stated that

plaintiff "would probably miss a lot of work because of the

nature of how she has displayed symptoms of her depression in the

past" (R. at 191). The court finds that the ALJ not only failed

---

[2]Also not mentioned by the ALJ was a statement by Dr. Allen
earlier in her report that "it is apparent that her tending to be
very self-conscious and the depression have probably zapped her
ability to focus and pay attention" (R. at 190-191).

to consider what weight, if any, he gave to the opinions of Dr. Allen when making his RFC findings, the ALJ also misstated the contents of Dr. Allen's report by making the findings of Dr. Allen appear less serious than Dr. Allen actually indicated in her report.

When explaining his RFC findings, the ALJ discounted plaintiff's reported decline in attention and concentration because it is not reflected in her daily activities which include crocheting, reading, spending time on the computer, watching televison and movies, and visiting her parents, children and grandchildren (R. at 17).  However, this finding fails to take into consideration Dr. Allen's evaluation in which Dr. Allen indicated that plaintiff has panic attacks if she is left alone with the grandkids for too long, and on one occasion when she was babysitting and the baby would not stop crying, the plaintiff locked herself in the bathroom for 5-10 minutes to get away from the sound (R. at 189).  Dr. Allen also stated that plaintiff mentioned that she tried to continue her old hobby of reading, but plaintiff indicated that she simply cannot concentrate long enough to do it (R. at 190).   For these reasons, this case shall be remanded in order for the ALJ to accurately consider the contents of Dr. Allen's report when making his RFC findings.

Third, the ALJ placed weight on the fact that, other than a visit to Prairie View in July 2004, plaintiff did not seek

therapy until March 2005, after the date last insured for benefits (December 31, 2004) (R. at 17, 18).  The ALJ also placed weight on the fact that no medical source who treated or examined the plaintiff had stated that plaintiff was disabled or seriously incapacitated for periods prior to the date last insured (R. at 18).

When plaintiff went to Prairie View on July 27, 2004, she was given a current GAF of 45, and a GAF for the past year of 50 (R. at 169).[3]  Plaintiff began seeking mental health treatment at COMCARE in March 2005 (R. at 170-181).  As the ALJ noted, upon admission at COMCARE, she had a GAF of 45 (R. at 171, 178, 181).  The ALJ then noted that with continued treatment at COMCARE she had "some improvement and an increased GAF" (R. at 14).  However, a review of the COMCARE records indicates her current and past GAF was listed at 50 on July 26, 2005, September 23, 2005, and November 4, 2005 (R. at 315-16, 309-10, 304-05).

---

[3]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders.  The scores in this case represent the following:

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work.  A claimant's impairment might lie solely with the social, rather than the occupational sphere.  A GAF score of fifty or less, however, does suggest an inability to keep a job. For this reason, such a GAF score should not be ignored.  <u>Lee v. Barnhart</u>, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).  On July 27, 2004, plaintiff's current GAF was listed at 45, and at 50 for the past year (R. at 169).  This was prior to the date she was last insured for benefits (December 31, 2004).  When plaintiff went to COMCARE in March 2005 her GAF was determined to be 45 (R. at 181).  During treatment during 2005, her current and past GAF scores were determined to be at 50 in July, September and November 2005 (R. at 304-05, 309-10, 315-16).  Thus, the record clearly shows that her GAF score remained in the 45-50 range from July 2004, prior to the expiration of her insured status, through November 2005.  A GAF score of 50 or less does suggest an inability to keep a job.  Furthermore, Dr. Lear and ARNP Harris from COMCARE opined that plaintiff had moderate limitations in all 20 categories on December 5, 2005.  The VE testified that a person, with these moderate limitations, based on the definition of moderate limitations as defined on the form they filled out, could not work (R. at 374-375).  Thus, the ALJ failed to take into consideration that plaintiff's GAF remained

15

in the 45-50 range from July 2004 through November 2005 despite treatment.

Furthermore, it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.  Ott v. Chater, 899 F. Supp. 550, 553 (D. Kan. 1995).  A person suffering from mental difficulties may be unable to recognize the need to seek treatment.  Caldwell v. Sullivan, 736 F. Supp. 1076, 1082 (D. Kan. 1990).

More recently, a court acknowledged that while failure to seek treatment or therapy may be probative of severity, the ALJ had failed to ask the claimant why she did not undergo counseling or therapy earlier.  The court noted that the ALJ had a basic duty of inquiry, to fully and fairly develop the record as to material issues.  The ALJ had an opportunity to ask plaintiff at two administrative hearings to ask the claimant about this, but did not.  Kratochvil v. Barnhart, 2003 WL 22176084 at *5 (D. Kan. Sept. 17, 2003).

Similarly, SSR 96-7p states the following:

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any

16

explanations that the individual may provide,
or other information in the case record, that
may explain infrequent or irregular medical
visits or failure to seek medical treatment.
The adjudicator may need to recontact the
individual or question the individual at the
administrative proceeding in order to
determine whether there are good reasons the
individual does not seek medical treatment or
does not pursue treatment in a consistent
manner. The explanations provided by the
individual may provide insight into the
individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7.  A review of the transcript of

the hearing indicates that plaintiff was not asked why she did

not seek therapy until March 2005.  The ALJ repeatedly noted in

his decision that plaintiff did not seek therapy until March

2005, which the ALJ indicated was after the date she was last

insured for benefits.  Therefore, the ALJ failed to comply with

SSR 96-7p and failed to meet his basic duty of inquiry by fully

and fairly developing the record on this issue.  On remand, the

ALJ shall comply with SSR 96-7p.

Fourth, the ALJ gave little weight to the RFC evaluation by

Dr. Lear and ARNP Harris because plaintiff had not seen Dr. Lear,

and the form was completed by the ARNP, who is not an acceptable

treating source.  Plaintiff testified that she has not seen Dr.

Lear (R. at 351).  The ALJ was correct that ARNP Harris is not an

acceptable medical source for purposes of 20 C.F.R. §

404.1513(a); however, the ALJ failed to recognize her opinion as

an "other" medical source.  20 C.F.R. § 404.1513(d)(1).  ARNP

17

Harris is an other medical source and is therefore an appropriate source of evidence regarding the severity of plaintiff's impairment, and the effect of her impairments on her ability to work.  Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003). On remand, the ALJ shall consider the opinions of ARNP Harris as an other medical source, and in light of all the evidence, including the opinions expressed by Dr. Allen.

The ALJ also noted that the treatment at COMCARE and the opinions by ARNP Harris came after the date the plaintiff was last insured.  Although correct, as noted above, the ALJ must consider this evidence in light of the fact that plaintiff's GAF remained in the 45-50 range from July 2004 through November 2005 despite treatment.

**IV.  Did the ALJ err in his step two findings?**

At step two, the ALJ found that plaintiff's severe impairments included affective disorder and anxiety.  Plaintiff argues that the ALJ erred by not including the diagnoses of post traumatic stress disorder and major depression as severe impairments.  Defendant argues that the ALJ's finding of severe impairments of affective disorder and anxiety encompass these other diagnoses as well.  Although the ALJ may have intended to encompass the various mental impairment diagnoses under affective disorder and anxiety, upon remand, the ALJ shall clarify his step two findings on this matter.

**V.  Did the ALJ err in his credibility analysis?**

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v.

Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The court has previously noted that the ALJ erred in the weight he gave to some of plaintiff's daily activities, including reading and spending time with her grandchildren, without considering the report of Dr. Allen.  Upon remand, the ALJ shall reevaluate plaintiff's credibility in light of all the evidence, including the report and opinions of all the medical sources.

Furthermore, on remand, the ALJ shall keep in mind that although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of pain testimony, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.  Thompson, 987 F.2d at 1490; see Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983)(the fact that claimant admitted to working in his yard, performed a few household tasks, worked on cars, and took occasional trips was found by the court to be activities not conducted on a regular basis and did not involve prolonged physical activity; while this evidence may be considered along

20

with medical testimony in the determination of whether a party is
entitled to disability benefits, such diversions do not
establish, without more evidence, that a person is able to engage
in substantial gainful activity).  One does not need to be
utterly or totally incapacitated in order to be disabled.
<u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001); <u>Jones v.</u>
<u>Sullivan</u>, 804 F. Supp. 1398, 1405 (D. Kan. 1992).  Therefore,
consideration of plaintiff's daily activities can and should be
considered when analyzing plaintiff's claims of pain, but should
not be relied on, in the absence of other evidence, to establish
that a person is able to engage in substantial gainful activity.

In the case of <u>Draper v. Barnhart</u>, 425 F.3d 1127, 1130-1131
(8th Cir. 2005), the ALJ noted that the claimant engaged in
household chores, including laundry, grocery shopping, mowing and
other chores.  The ALJ concluded that claimant's allegations of
disabling pain were inconsistent with her reports of her normal
daily activities and were therefore not deemed credible.  The
court found that substantial evidence did not support this
conclusion, holding as follows:

> The fact that Draper tries to maintain her
> home and does her best to engage in ordinary
> life activities is not inconsistent with her
> complaints of pain, and in no way directs a
> finding that she is able to engage in light
> work.

<u>Draper</u>, 425 F.3d at 1131.

IT IS THEREFORE RECOMMENDED that the decision of the

21

Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on August 22, 2007.


                        s/John Thomas Reid
                        JOHN THOMAS REID
                        United States Magistrate Judge